**In re Wendy Glasgow BRASHER, Debtor.**

**Wendy Glasgow Brasher, Appellant,**

v.

**Tom McGregor, Appellee.**

**No. Civ.A. 99–T–1450–N.**

United States District Court, M.D. Alabama, Northern Division.

Sept. 27, 2000.

Earl Gillian, Jr., Montgomery, AL, for Wendy Glasgow Brasher, debtor.

Janie S. Gilliland, Law Office of Janie S. Gilliland, Montgomery, AL, for Tom McGregor, appellee.

## OPINION

MYRON H. THOMPSON, District Judge.

Appellant Wendy Glasgow Brasher, a Chapter 7 debtor, challenges a decision of the United States Bankruptcy Court for the Middle District of Alabama sustaining the appellee bankruptcy trustee's objection to Brasher's claim of exemption under § 38–4–8 of Title 38 of the 1975 Code of Alabama for her federal earned-income tax credit refund. This district court's appellate jurisdiction has been properly invoked under 28 U.S.C.A. § 158(a). Having determined that the earned-income credit falls within the "public assistance" exemption of § 38–4–8, this court now reverses the decision of the bankruptcy court.

### I. STANDARD OF REVIEW

The facts in this case are not in dispute. The matter currently before the court presents a pure question of law: Whether the exemption in § 38–4–8 for "public assistance" includes the earned-income credit. In its appellate capacity, this district court reviews determinations of law by the bankruptcy court de novo.

## II. BACKGROUND

In January 1999, Brasher filed a petition for relief under Chapter 7 of the Bankruptcy Code. Subsequent to this filing, she received a federal earned-income-credit refund in the amount of $ 3,384.00. The earned-income-credit "Provides relief to earners with dependent children who pay little or no income taxes by providing a refundable tax credit based on earned income." S.Rep. No. 94–36 (1975), *reprinted in* 1975 U.S.C.C.A.N. 54. Brasher then amended her petition to claim the refund as an exemption under § 38–4–8 of the 1975 Alabama Code. The trustee filed a timely objection to her claim to keep the earned-income-credit money, and the trustee's objection was sustained by the Bankruptcy Court. Brasher filed a timely notice of appeal.

## III. DISCUSSION

■ Under Chapter 7 of the Bankruptcy Code, debtors are entitled to exempt certain property from the estate as provided by law. While the property of the estate is ordinarily taken and liquidated by the trustee in order to make payments to the debtor's creditors, *see* 11 U.S.C.A. § 704(1), exempt property is returned to the debtor, *see* 11 U.S.C.A. § 522. The Bankruptcy Code lays out a default list of debtor exemptions in § 522(d). However, § 522(b) of the Code also provides that individual States may opt to substitute their own state-law exemptions for the federal bankruptcy exemptions. Alabama has availed itself of this option. *See* 1975 Ala. Code § 6–10–11. Consequently, Alabama law governs the question of whether Brasher's earned-income credit falls within an exemption.

Section 38–4–8 of Title 38 of the 1975 Alabama Code, the state-exemption provision at issue here, reads in part as follows: "All amounts paid or payable as public assistance to needy persons[,] ... in the case of bankruptcy, shall not pass to the trustee or other person acting on behalf of the creditors of the recipient of public assistance." There do not appear to be any reported cases construing the term "public assistance" in this statute.

■ As an initial matter, this court is inclined to conclude that the most natural reading of the § 38–4–8 exemption—"All amounts paid or payable as public assistance to needy persons"—is a broad one given the Alabama Legislature's choice of the word "all" and the lack of any language that would restrict or qualify the category of "public assistance to needy persons." The apparent clarity of this language is, at least, important evidence of the legislative intent. As the Alabama Supreme Court observed in *Ex parte Employees' Retirement System of Alabama,* 644 So.2d 943, 946 (Ala.1994) (quoting *IMED Corp. v. Systems Engineering Associates Corp.,* 602 So.2d 344, 346 (Ala. 1992)), "It is settled law in Alabama that: ... 'Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect.' "

Moreover, while there is no binding precedent on point, this initial impression gets further persuasive support from the fact that the bankruptcy courts construing similarly worded state-law exemptions from other States have been essentially unanimous in finding the earned-income credit to be exempt under similarly worded state statutes. *See In re Longstreet,* 246 B.R. 611 (Bankr.S.D.Iowa 2000) (Iowa exemption for "any public assistance benefit" is broad enough to include the federal earned-income credit); *accord In Re Davis,* 136 B.R. 203 (Bankr.S.D.Iowa 1991); *In re Brockhouse,* 220 B.R. 623 (Bankr.C.D.Ill.1998) (holding the earned-income credit exempt under Illinois's exemption for a "public assistance benefit"); *accord In re Fish,* 224 B.R. 82 (Bankr.

S.D.Ill.1998); *In re Brown,* 186 B.R. 224 (Bankr.W.D.Ky.1995) (holding the earned-income credit exempt under Kentucky's exemption for "public assistance"); *accord In re Goldsberry,* 142 B.R. 158 (Bankr. E.D.Ky.1992); *In re Jones,* 107 B.R. 751 (Bankr.D.Idaho 1989) (holding the earned-income credit exempt under Idaho's exemption for "public assistance legislation").

The small number of cases that have rejected an earned-income-credit exemption involve state statutes written more restrictively than is § 38–4–8. For example, in *In re Collins,* 170 F.3d 512, 513 (5th Cir.1999), the Fifth Circuit Court of Appeals rejected an earned-income-credit exemption claim because the Louisiana statute specifically defined exempted assistance to mean "money payments *under this title.*" (Emphasis added.) Similarly, *In re Trudeau,* 237 B.R. 803, 807 (10th Cir. BAP 1999), involved a Wyoming statute that expressly exempts only "public assistance and social services provided *by this article.*" (Emphasis added.)

*In re Rutter,* 204 B.R. 57 (Bankr.D.Or. 1997), is the only close case that might arguably be pressed into the trustee's service. The *Rutter* court found Oregon's exemption statute to be limited to state-funded assistance because of the statutory language that "assistance shall be granted in accordance with the rules and regulations of the [Oregon Adult and Family Services Division] .... " 204 B.R. at 60 n. 2. But, in *Rutter,* the court distinguished the Oregon exemption as narrower than other state-law exemptions held to include the earned-income credit, such as Kentucky's and Illinois's, both of which closely resemble Alabama's § 38–4–8. *See id.* at 59.

The bankruptcy court below, however, determined that § 38–4–8 should be read in conjunction with the rest of Title 38 of the Alabama Code, and that, thus read, "public assistance" can refer to only *state* provision under Title 38 not *federal* public assistance such as the earned-income credit.[1] The bankruptcy court decided that "public assistance" in § 38–4–8 means only state-provided assistance because, in that court's view, Title 38 generally deals with only state welfare provision (for children, Confederate widows, the aged, blind, children, disabled, and incompetent).[2] Further, the bankruptcy court was impressed by the fact that "[e]very other reference to the term 'public assistance' in Title 38 unmistakably refers to that 'public assistance' given by the State of Alabama to its neediest citizens," and thought "it would be surprising [for the Legislature] to use the term differently in Section 38–4–8 than it is used otherwise throughout Title 38." [3]

This district court agrees with the bankruptcy court that the overall statutory scheme should be considered relevant evidence for discerning the legislative intent behind a particular provision such as § 38–4–8. *See Employees' Retirement System of Alabama,* 644 So.2d at 945 ("In applying the clear meaning of the statute, courts must look at the entire statutory scheme rather than at isolated phrases or clauses."). But, contrary to the bankruptcy court's conclusion that a narrowing construction of the public-assistance exemption follows from the context and spirit of the statute as a whole, this court finds nothing in the broader act to disconfirm

---

1. *See* Memorandum opinion of the bankruptcy court, p. 3.

2. *See id.*

3. *Id.* For examples of instances where "public assistance" appears in the statute modified by limiting language, *see* 1975 Ala.Code § 38–1–13 ("Public assistance shall be *payable under this act* to or on behalf of any person who is a needy blind person ....") (emphasis added); *id.,* § 38–1–4(a) (The county board of human resources of each county shall on or before January 30, April 30, July 30 and October 30 file or cause to be filed with the probate judge a complete report showing the names of all recipients of public assistance in the county receiving payments *under the provisions of this title* ....) (emphasis added).

the breadth of § 38–4–8's plain language. Moreover, the overall statutory scheme actually provides consistent and powerful support for taking the broad language of the public-assistance exemption at its word. First, contrary to the bankruptcy court's belief, Title 38 does not speak exclusively of *state* welfare provision. Federal law and federal (as well as local) welfare provision are mentioned many times in the statute. *See, e.g.,* 1975 Ala. Code §§ 38–1–6 (authorization of state and local governments to participate in programs to provide assistance to the aged), 38–2–5 (allocation of funds), 38–4–1(a) (persons to whom public assistance is payable), 38–4–2(b) (determination of eligibility and amount of assistance). In fact, Title 38 expressly contemplates that federal, state and local governments may all play a role in welfare provision, and directs that any joint action be cooperatively organized:

> "The aim of the state department shall be the promotion of a unified development of welfare activities and agencies of the state and of the local governments so that each agency and each governmental institution shall function as an integral part of a general system . . . it shall be the duty and the responsibility of the state department to . . . Act as the agent of the federal government in welfare matters of mutual concern . . ."

1975 Ala.Code § 38–2–6; *see also id.,* §§ 38–1–6(a) (authorization of state and local governments to participate in programs to provide assistance to the aged), 38–2–9 (appropriations by counties and municipalities).

Second, the fact that the term "public assistance" appears in some sections in Title 38 modified by restrictive language— for example, "public assistance . . . *payable under this chapter*", 1975 Ala.Code § 38–1–13 (emphasis added)—does not, as the bankruptcy court argued, imply that these restrictive terms should be read implicitly to modify the term "public assistance" anywhere it appears in the statute.

Rather, the fact that the Alabama Legislature employed modifying terms for "public assistance" in some sections of the title but not in § 38–4–8 is more plausibly read as a deliberate choice not to limit the breadth of the public-assistance exemption in § 38–4–8. This conclusion is strengthened by the fact that the Alabama Legislature was precise enough to modify the term "public assistance" with various limiting terms in different sections of Title 38: Compare, for example, "public assistance . . . *payable under this chapter*", 1975 Ala.Code § 38–1–13 (emphasis added), with "The state department . . . shall allocate *such federal and state funds for* public assistance . . . ," 1975 Ala.Code § 38–2–5. (emphasis added).

The considered nature of the explicit text is further demonstrated by the fact that Title 38 begins with a list of definitions distinguishing among different units of government and categorizing different kinds of funds under both state and federal standards. *See* 1975 Ala.Code § 38–1–1. It does not make sense to think that, after the legislature carefully parsed the state versus federal distinction in the beginning of Title 38, it forgot to specify that "public assistance" in § 38–4–8 really means only state public assistance.

A third relevant aspect of the statutory context is the essential dependence of § 38–4–8 on federal law. The bankruptcy exemption in § 38–4–8 is a state provision that can displace the default federal exemptions in 11 U.S.C.A. § 522(d)(19)(a) only because federal law, 11 U.S.C.A. § 522(b), and Alabama's "opt out" law, 1975 Ala.Code § 6–10–11, authorize such displacement. Further, the default federal list of exemptions covers a mix of local, state, and federal public assistance, including "a social security benefit, unemployment compensation, or local public assistance benefit." 11 U.S.C.A. § 522(d)(19)(a). Given this context of significant interplay between federal and state law, it is all the more strained to think that, absent some express language so indicating, a state-law limitation should

be read into § 38–4–8's clear language covering "all amounts paid or payable as public assistance to needy persons."

While the bankruptcy court decided against Brasher on the ground that federal, as opposed to state, public assistance does not fall within § 38–4–8's bankruptcy exemption, that court did not question Brasher's characterization of the earned-income credit as a kind of "public assistance." [4] The trustee, however, advances the additional argument that the earned-income credit does not even count as a form of "public assistance" under federal law, and thus, he presumably implies, it should not be considered "public assistance" under § 38–4–8 even if that provision does cover federal as well as state public assistance.[5] The trustee asserts that the earned-income credit cannot be "public assistance" because beneficiaries receive their funds only by claiming an "overpayment" of federal income taxes.[6]

This last argument is, however, beside the point; Congress's choice to use the Internal Revenue Service Code as the administrative mechanism for the earned-income credit does nothing to gainsay the fact that the clear purpose and effect of the earned-income credit is public assistance. *See* Mark Kelman, *Strategy or Principle?: The Choice Between Regulation and Taxation* (in distributing public assistance, legislatures do not limit themselves to a particular administrative form, such as a conventional direct grant, rather they commonly choose among a variety of tax and regulatory substitutes). Economically, the earned-income credit does not function as "mere tax relief" but rather is "in essence, a grant." *In re Longstreet,* 246 B.R. 611, 614 (Bankr.S.D.Iowa 2000). Eligible filers, all of whom are low-income persons, need not have paid or owed any taxes to qualify for and receive an earned-income-credit refund. *See Sorenson v.*

*Secretary of Treasury of United States,* 475 U.S. 851, 854, 106 S.Ct. 1600, 1603–04, 89 L.Ed.2d 855 (1986). This public subsidization of eligible low-income persons was fully intended by Congress. *See* S.Rep. No. 94–36 (1975), *reprinted* in 1975 U.S.C.C.A.N. 54. The goals of the earned-income credit, as described by the Supreme Court, are as follows:

> "The earned-income credit was enacted to reduce the disincentive to work caused by the imposition of Social Security Taxes on earned income (welfare payments are not similarly taxed), to stimulate the economy by funneling funds to persons likely to spend the money immediately, and to provide relief for low-income families hurt by rising food and energy prices."

*Sorenson,* 475 U.S. at 864, 106 S.Ct. at 1608–1609 (holding, on other grounds, that Congress intended its child-support intercept program to reach earned-income-credit payments). Given this aim and effect of a subsidy to certain low-income families, this court finds the earned-income credit to be well within any sensible construction of the term "public assistance" in § 38–4–8.

### IV.  CONCLUSION

Read in light of the overall statutory scheme, the plain language of § 38–4–8, which covers "All amounts paid or payable as public assistance to needy persons," leads this court to conclude that the earned-income credit falls within the core of the bankruptcy exemption. An appropriate judgment reversing the decision of the bankruptcy court and remanding the case for further proceedings consistent with this opinion will be entered.

---

**4.** "An Earned Income Credit ... is an amount payable to certain low income persons." Memorandum opinion of the bankruptcy court, p. 2.

**5.** Appellee's brief, p. 9.

**6.** *Id.*