In re Arianna M. MAINE, Debtor.

No. 11–31117.

United States Bankruptcy Court,
S.D. Ohio,
Western Division,
at Dayton.

Nov. 18, 2011.

Andrew Zeigler, Thompson and Deveny Co., LPA, Dayton, OH, for Debtor.

**Decision Granting In Part and Denying In Part Trustee's Objection to Debtor's Claim of Exemption in Bank Account**

GUY R. HUMPHREY, Bankruptcy Judge.

## I. Introduction and Issues Presented for Determination

This contested matter is before the court on the Chapter 7 trustee's objection

to the debtor's claim of exemption in a bank account. The debtor claims that the funds in the bank account are exempt because they are the debtor's Earned Income Credit and the Additional Child Tax Credit received from the federal government and, therefore, are exempt pursuant to Ohio Revised Code § 2329.66(A)(3). The trustee has objected to the debtor's claim of exemption in these funds for the following reasons: a) the funds lost their exempt status once they were paid by the federal government to the debtor and deposited by the debtor into her bank account; and b) the funds lost their exempt status after they were commingled with the debtor's other funds and expenses were paid by the debtor from the commingled funds. Thus, the issues presented to the court for determination are:

   a. Do the portions of a federal income tax refund which are attributable to the Earned Income Credit and Additional Child Tax Credit retain their exempt status under Ohio law when these funds are paid out by the United States Treasury and deposited together with the rest of the tax refund directly into a debtor's bank account and commingled with other funds in the debtor's bank account?

   b. If such funds remain exempt upon being paid out by the United States Treasury and deposited in the debtor's bank account with other funds and then funds are subsequently paid out of that commingled account, what is the appropriate method to determine the exempt amount of funds in the account on the bankruptcy petition date?

For the reasons explained, the court concludes that funds attributable to the Earned Income Credit ("EIC") and the Additional Child Tax Credit ("CTC") remain exempt after being paid to the debtor by the United States Treasury and upon being deposited into a bank account, even if those exempt funds are commingled with nonexempt funds in the debtor's bank account. The court further finds that a debtor may exempt such funds that are attributable to the EIC and the CTC that are commingled with other debtor funds in accordance with the lowest intermediate balance method of tracing.

## II. Procedural Background

On March 8, 2001 Arianna M. Maine (the "Debtor") filed a voluntary petition under chapter 7 of the Bankruptcy Code. Among her scheduled assets on the date of filing was $7,704.02 in a checking account at Fifth Third Bank. According to Schedule B, this amount reflected the Debtor's receipt of a 2010 federal tax refund in the amount of $8,609.00, minus $904.98 in expenditures for attorney fees, bills, and living expenses. The Debtor claimed $6,980.00 of the checking account as exempt under Ohio Revised Code § 2329.66(A)(9)(g) based upon those funds being proceeds from her EIC and CTC and another $425.00 pursuant to § 2329.66(A)(3) as exempt cash. The Trustee timely objected to the Debtor's claim that $6,980.00 of the amount in the checking account is exempt as EIC and CTC, but did not object to the cash exemption of $425.00. The Debtor filed a response contesting the Trustee's objection. The Debtor and Trustee filed a set of stipulated facts (doc. 32) and legal memoranda (docs. 33, 34 & 35).

## III. Facts

The following facts were agreed upon by the parties through the stipulations filed with the court. The Debtor had a prepetition balance of $409.72 in her Fifth Third Bank checking account (the "Account") on March 3, 2011. The Debtor's 2010 federal income tax refund in the amount of $8,609.00 was directly deposited into the Account on March 4, 2011. The refunda-

ble portions of the Debtor's EIC and CTC totaled $6,980.00 of the $8,609.00. The remainder of the tax refund ($1,629.00) represents excess federal tax withholdings from the Debtor's wages, as well as certain non-exempt tax credits. The Debtor made four separate withdrawals in the amounts of $514.00, $550.00, $158.00, and $250.00 from the Account on March 4, 2011. The total of these four withdrawals is $1,472.00. At the close of business on March 4, 2011 the Account showed a balance of $7,546.72. On March 7, 2011 the State of Ohio made three direct deposits of $23.79, $71.51, and $84.00 into the account for child support that she regularly receives. The beginning balance in the account as of March 8, 2011, the date of her bankruptcy filing, was $7,726.02.

In addition to her claimed exemption for $6,980.00 under Ohio Revised Code § 2329.66(A)(9)(g), the Debtor exempted $425.00 of the monies in the account pursuant to § 2329.66(A)(3). The Trustee does not object to the latter exemption, and the parties further agree that the three deposits of $23.79, $71.51, and $84.00 made on March 7, 2011 are exempt under Ohio Revised Code § 2329.66(A)(11) as child support payments.

## IV. Jurisdiction

This court has jurisdiction pursuant to 28 U.S.C. § 1334 and this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), and (O).

## V. Standards and Burdens Relating to the Determination of the Issues

■ The Trustee has the burden by a preponderance of the evidence to show "that the exemptions are not properly claimed." Bankruptcy Rule 4003(c); *Baumgart v. Alam (In re Alam)*, 359 B.R. 142, 147 (6th Cir. BAP 2006). Further, "Ohio exemption provisions are to be construed liberally in favor of the debtor and a debtor's dependents and any doubt in

interpretation should be in favor of granting the exemption." *Id.* at 148 and *In re Jackson*, 348 B.R. 771, 772 (Bankr. S.D.Ohio 2006), *quoting In re Lewis*, 327 B.R. 645, 648 (Bankr.S.D.Ohio 2005).

## VI. Legal Analysis

### A. Funds Attributable to the EIC and the CTC Retain Their Exempt Status Under Ohio Law After Such Funds are Paid by the United States Treasury and Deposited Together With the Rest of the Debtor's Federal Tax Refund Into the Debtor's Bank Account

■ The Trustee argues that funds attributable to the EIC and CTC received by a debtor from the United States Treasury lose their exempt status under Ohio law once the funds are released by the United States in the form of a tax refund check or direct deposit and are deposited into a debtor's bank account. In essence, the Trustee's argument is that once the government check is issued or the direct deposit made, those funds become cash or proceeds of the exempt credits, and the cash or proceeds are only exempt to the extent of the debtor's exemption for cash under Ohio law. The Trustee also argues that the commingling of these funds with other nonexempt funds removes them from exempt status. The court rejects these arguments as being an overly restrictive interpretation of the Ohio exemption provided by Ohio Revised Code § 2329.66(A)(9)(g) and joins Judge Buchanan in the Southern District of Ohio and Judge Whipple in the Northern District of Ohio in finding that such funds are exempt under Ohio law.

Section 2329.66(A)(9)(g) of the Ohio Revised Code provides that "[e]very person who is domiciled in this state may hold property exempt from execution, garnishment, attachment or sale to satisfy a judg-

ment or order, as follows: [t]he person's interest in ... [p]ayments under Section 24 or 32 of the 'Internal Revenue Code of 1986,' 100 Stat. 2085, 26 U.S.C. § 1, as amended." Section 24 of the Internal Revenue Code provides, *inter alia*, for a refundable credit known as the CTC, while Section 32 provides for the EIC. *See* 26 U.S.C. §§ 24(d) and 32; *In re Patterson*, 2010 WL 3606893 at *2, 2010 Bankr.LEXIS 2899 at *4 (Bankr.N.D.Ohio Sept. 10, 2010). It is undisputed that the Debtor is domiciled in the state of Ohio and therefore may claim an exemption under § 2329.66(A)(9)(g) to the extent this subsection applies.

This Court previously held that funds which are traceable to Ohio Public Employees Retirement System disability payments and would otherwise be exempt under Ohio Revised Code §§ 2329.66(A)(10)(a) and 145.56 remain exempt even after they are deposited into a debtor's checking account in the form of a federal tax refund. *In re Cook*, 406 B.R. 770, 775–78 (Bankr.S.D.Ohio 2009). This decision was based on the holding of the Supreme Court of Ohio in *Daugherty v. Central Trust Co. of Northeastern Ohio, N.A.*, 28 Ohio St.3d 441, 504 N.E.2d 1100 (1986) and the expansive exemption for OPERS benefits found in Ohio Revised Code § 145.56. *Id.* at 777–78, 504 N.E.2d 1100.

In *Daugherty*, the court held that personal earnings exempt under Ohio Revised Code § 2329.66(A)(13) "retain their exempt status when deposited into a personal checking account, so long as the source of the exempt funds is known or reasonably traceable." 504 N.E.2d at 1103. The court further noted that the funds on deposit met the exemption test set forth in *Porter v. Aetna Cas. & Sur. Co.*, 370 U.S. 159, 162, 82 S.Ct. 1231, 8 L.Ed.2d 407 (1962), because they were "readily available as needed for support and mainte-

nance...." *Daugherty*, 504 N.E.2d at 1103 n. 3. The court explained that the legislative purpose in exempting certain property is to protect funds intended primarily for maintenance and support of the debtor and the debtor's family and that this purpose would be frustrated if this protection were lost simply because the exempt funds were deposited into the debtor's checking account and used to pay by check for basic necessities. *Id.* at 1103.

Judge Walter followed this Court's reasoning in *Cook and* applied the *Daugherty* holding to a tax refund comprised, in part, of unemployment compensation and social security benefits which are exempt under Ohio Revised Code §§ 2329.66(A)(9)(c) and (A)(17), respectively. *See In re Sparks*, 410 B.R. 602, 606 (Bankr.S.D.Ohio 2009). Judge Walter noted that, similar to the OPERS exemption law, the Ohio statute exempting unemployment compensation is clearly designed to protect funds earmarked for a person's maintenance and support. *Id.* He also found that the social security program likewise is obviously designed to protect funds necessary for the maintenance and support of individuals. *Id.* The broad exemption language contained in Ohio Revised Code § 4141.32 for unemployment compensation and in 42 U.S.C. § 407(a) for social security payments was in Judge Walter's view consistent with the policy that a debtor should not be deprived of these exemptions simply because the funds were delivered in the form of a tax refund. *Id.*

More recently, two bankruptcy judges in Ohio rejected the same arguments raised by the Trustee in this case. *See Patterson*, 2010 WL 3606893, 2010 Bankr.LEXIS 2899 and *In re Wood*, 459 B.R. 263 (Bankr. S.D.Ohio 2011). In *Patterson*, the trustee argued that the EIC and the additional CTC lost their exempt status when they were deposited into the debtor's bank ac-

count in the form of a federal tax refund, commingled with funds from other sources, and spent, at least in part, as cash. Judge Whipple adopted the reasoning of the United States Supreme Court in *Porter*, 370 U.S. at 162, 82 S.Ct. 1231 (veteran's disability compensation remained exempt after being deposited into savings and loan account) and *Philpott v. Essex County Welfare Bd.*, 409 U.S. 413, 416–17, 93 S.Ct. 590, 34 L.Ed.2d 608 (1973) (social security disability benefits retained their exempt status after being deposited into recipient's bank account), as well as *Daugherty*, in overruling the trustee's objection to the debtor's claim of exemption. *Patterson*, 2010 WL 3606893 at *2, 2010 Bankr.LEXIS 2899 at *4.

In *Wood*, the trustee contended that the term "payments" in Ohio Revised Code § 2329.66(A)(9)(g) should be construed to comprise only those tax refund payments which are *owed* to a debtor and not tax refund payments that a debtor has already *received*. 459 B.R. 263, 266. The trustee based this argument on his definition of "payments" to mean "the delivery of money or its equivalent in either specific property or services by one person from whom it is due to another person to whom it is due." *Id.* Accordingly, the trustee conceded that the debtor would have been able to exempt the monies attributable to the EIC and the CTC if her tax refund had been outstanding on the date of her bankruptcy filing, but maintained that once the tax refund was delivered to the debtor, the funds lost their exempt status. Judge Buchanan concluded that the trustee's narrow interpretation was not supported by the language of § 2329.66(A)(9)(g) because that particular exemption did not refer to "payments owed" or "payments received," but merely to "payments." *Id.* at 266–67. Judge Buchanan also found that the trustee's proposed construction was not consonant with the remedial nature of exemption statutes

in affording a debtor the basic necessities that are essential to a fresh start. *Id.* at 266.

The Trustee acknowledges that the *Patterson* decision directly supports the Debtor's position in this case. He argues, however, that Judge Whipple failed to address the actual holdings in *Porter and Philpott* which, in his opinion, depend on the fact that both of the federal statutes in question expressly exempt monies that are payable, as well as monies already paid. He contends that because neither the Internal Revenue Code nor the Ohio statute exempting the EIC and the CTC contain this "payable or paid" formulation, the Ohio Legislature evinced an intent not to exempt these refundable credits once they are paid out to recipients together with nonexempt funds and are commingled in the recipients' bank accounts. As noted above, *Wood*, which was not decided until after this contested matter had been fully briefed, rejected a similar argument as being inconsistent with the language of the exemption provision and with the remedial policy of exemptions in general.

The Trustee also concedes that the language employed by the Supreme Court of Ohio in *Daugherty* is quite expansive and supports the Debtor's position. He argues, however, that the actual holding in *Daugherty* is much narrower and applies only to wages that have been deposited into a personal checking account. He believes the fact that the Supreme Court of Ohio has not seen fit to extend its holding to cover other types of exempt property in the 25 years since *Daugherty* was decided supports this narrow construction.

Finally, the Trustee attempts to distinguish the decisions in *Cook* and *Sparks*, both of which relied on *Daugherty* for their holdings, on the basis that the state statutes exempting unemployment compensation and OPERS benefits and the

federal statute exempting social security payments are expansive while the exemption for the EIC and the CTC contained in Ohio Revised Code § 2329.66(A)(9)(g) is not. The Trustee argues that in the absence of "an expansive explicit statutory statement broadly exempting such interests ..." as is the case with OPERS, unemployment, and social security benefits, the "unadorned" exemption for the EIC and the CTC should not be expanded to include funds that already had been paid to the Debtor before she filed her bankruptcy petition.

■ It is true that Congress did not enact a specific nonbankruptcy exemption for EICs and CTCs as it did for social security payments. *See In re Thompson,* 336 B.R. 800, 803 n. 12 (Bankr.D.Nev. 2005). It does not follow, however, that the relatively sparse language of Ohio Revised Code § 2329.66(A)(9)(g) shows an intent on the part of the Ohio Legislature not to exempt EICs and CTCs once they have been paid out to their recipients. The term "payments" as used in § 2329.66(A)(9)(g) appears to be undefined. In the absence of a statutory definition, Ohio law provides that words and phrases be construed according to common usage. *See* Ohio Revised Code § 1.42; *In re Cordy,* 254 B.R. 413, 415 (Bankr. N.D.Ohio 2000). Black's Law Dictionary lists two definitions for the term "payment":

1. Performance of an obligation by the delivery of money or some other valuable thing accepted in full or partial discharge of the obligation; and

2. The money or other valuable thing so delivered in satisfaction of an obligation.

BLACK'S LAW DICTIONARY 1165 (8th ed. 2004). Whichever definition is used, the Court agrees with Judge Buchanan that the statute makes no distinction between payments owed or payments received. *See Wood,* 459 B.R. at 266–67.

The Trustee's interpretation of Ohio Revised Code § 2329.66(A)(9)(g) is not consonant with the mandate that Ohio exemptions be construed liberally in favor of the debtor and the debtor's dependents and that any doubt regarding proper construction be resolved in favor of granting the exemption. This court does not believe that the intention of the Ohio Legislature in enacting § 2329.66(A)(9)(g) was to exempt such funds while held by the United States, but as soon as they are released by the United States and received by a taxpayer to be attachable by a creditor simply because the debtor deposited those funds into a bank account. As recognized by the bankruptcy court decisions discussed, such a conclusion would gut the exemption and defeat the purpose of the statute—to provide debtors with sufficient property and funds to maintain a minimum existence. The exemption would be worthless if creditors and bankruptcy trustees could attach such funds as soon as the debtor received them because the debtor would have no means to protect those funds once they are received and prior to needing to expend those funds for her bare necessities.[1]

Therefore, following the logic of its earlier decision in *Cook* and the decisions of Judges Whipple and Buchanan, the Court

---

1. As the Trustee acknowledges in footnotes 2 and 10 of his brief (doc. 34): "The legislature's purpose, in exempting certain property from court action brought by creditors, was to protect funds intended primarily for maintenance and support of the debtor's family ... This legislative intent would be frustrated if exempt funds were automatically deprived of their statutory immunity when deposited in a checking account which a depositor commonly maintains in order to pay by check those regular subsistence expenses he incurs." *Daugherty,* 28 Ohio St.3d at 445, 504 N.E.2d 1100 (internal citation omitted).

concludes that an Ohio court applying Ohio law would find the funds represented by the tax refund which are reasonably traceable to the EIC and the CTC are exempt under Ohio Revised Code § 2329.66(A)(9)(g) even though the tax refund included nonexempt funds and the proceeds were further commingled with monies already present in the Debtor's Fifth Third Bank checking account.

## B. The Debtor May Exempt Funds that are Attributable to the EIC and the CTC that are Commingled with Other Debtor Funds In Accordance with the Lowest Intermediate Balance Method

Having determined that the funds representing the EIC and the CTC retain their exempt status upon being paid to the debtor by the United States Treasury and upon being commingled with other portions of the tax refund and with other debtor funds, the Court will now turn to the question of what portion of the total funds in the account on the petition date is reasonably traceable to the EIC and the CTC and what portion needs to be turned over to the Trustee as nonexempt. For the reasons that follow, the court chooses to employ the lowest intermediate balance test ("LIBT") to determine what portion of funds in the debtor's bank account are exempt.

The tracing of commingled funds is necessarily case-specific. *See Wood,* 459 B.R. at 268–69, *citing United States v. Henshaw,* 388 F.3d 738, 741 (10th Cir. 2004); *In re Burke,* 2005 Bankr.LEXIS 1886 at *11 (Bankr.D.Or. Aug. 2, 2005); *In re Perkins,* 2011 WL 4458961 at *3–4, 2011 Bankr.LEXIS 3641 at *9–10 (Bankr. N.D.Ohio Sep. 23, 2011). Further, in choosing a method, a court should consider the policy underlying the exemption and the general rule that exemptions should be construed in favor of the debtor. *See In*

*re Lantz,* 451 B.R. 843, 848 (Bankr.N.D.Ill. 2011); *Perkins,* 2011 WL 4458961 at *2, 2011 Bankr.LEXIS 3641 at *5.

The Trustee argues in favor of a pro rata tracing rule in which withdrawals from an account comprising both exempt and nonexempt funds are attributed to each in the same proportion as existed at the time of the withdrawals. In utilizing this method, the Trustee starts with the balance in the account prior to the direct deposit of the tax refund ($409.72) and adds in the total amount of the refund ($8,609.00) for a total of $9,018.18 before any withdrawals. The portion of the refund comprising the EIC and the CTC is $6,980.00, which is 77.395% of the sum of the total federal refund and the amount already in the account before the refund was deposited. The balance in the Account as of the petition date was $7,726.02. From this amount, the Trustee subtracts the three deposits comprised of exempt child support ($179.30) to arrive at $7,546.72. He multiplies $7,546.72 by 77.395% and concludes that $5,840.75 are exempt funds under his pro rata method and the remaining $1,705.94 is nonexempt. Lastly, the Trustee subtracts the undisputed $425.00 cash exemption and argues that the resulting figure ($1,280.94) is the amount that the Debtor needs to turn over to him as nonexempt funds.

The Debtor advocates that the determination as to the method to use to trace exempt funds should be done on a case-by-case basis, citing *In re Burke, with* the court analyzing the facts of the case, calculating under each possible tracing method, and then choosing and applying the particular method that results in the debtor retaining the most funds. The Debtor's argument is premised on the fresh start policy of bankruptcy law and the principle of Ohio law that exemptions are to be construed liberally in favor of the debtor.

*See Brief in Support of Debtor's Response to the Chapter 7 Trustee's Objection to Claimed Exemptions,* pp. 5–6 (doc. 33).

In this case the Debtor argues that the "first in, first out" accounting method should be used because this method eliminates the risk of exempt funds being turned over to the Trustee for distribution to creditors. The Debtor begins her analysis with the direct deposit of the tax refund ($8,609.00) into her Fifth Third Bank checking account on March 4, 2011. Of this amount, $6,980.00 is exempt as EIC and CTC and the remaining $1,629.00 is exempt only as to any portion of the Debtor's cash and wild card exemptions which may be available. The Debtor then asserts that she "elected" to spend $1,472.00 of the nonexempt portion of her tax refund, leaving a balance of $7,546.72 at the close of business on March 4, 2011. Several deposits for a total of $179.32 were made to the Debtor's account on March 7, 2011, but these were claimed exempt pursuant to Ohio Revised Code § 2329.66(A)(11) as domestic support payments. The Debtor also claimed a cash exemption of $425.00 pursuant to § 2329.66(A)(3). Thus, under her "first in, first out" method, the Debtor would have the Court start with a balance of $7,726.02, then subtract the following sums: $179.30 as exempt child support, $6,980.00 as the exempt portion of her federal tax refund attributable to the EIC and the CTC, $425.00 as her cash exemption, and $1,472.00 which represents the amount that she "elected" to spend from the "nonexempt" portion of her tax refund, resulting in $141.72 as the amount the Debtor must turn over to the Trustee as the remaining nonexempt funds.

The Trustee replies that the Debtor's suggested formula ignores all withdrawal activity in the Account and therefore is not "tracing" in any accepted legal sense of the word, much less "reasonable tracing." In the Trustee's view, the Debtor impermissibly substitutes the mere identification of a deposit's source, which is but a single step, for the entire tracing analysis itself. The effect is that all expenditures come from nonexempt funds and nearly all that remains in the Account is exempt. The Trustee also takes issue with the use of either a "first in, first out" or a "first in, last out" formulation where, as is the case here, there is a large unitary deposit containing both exempt and nonexempt funds. In the Trustee's opinion, only a pro rata rule closely accounts for all deposit and withdrawal activity and avoids a windfall for either a creditor or debtor.

The court has arrived at the same exempt and nonexempt numbers as the Debtor, but only on a different basis. The court rejects both the Trustee's and the Debtor's proposed tracing methods. While the tracing of funds is case specific because each case will involve different amounts, withdrawals, deposits, balances and other distinguishing factual circumstances, use of the LIBT to determine the amount of exempt funds: a) eliminates the arbitrariness of the Debtor's approach of calculating the numbers under each method and choosing the method that achieves the best result for the debtor; b) eliminates the arbitrariness noted by the Trustee of using the LIFO, FILO, or FIFO methods in any given case; c) is a recognized tracing method; d) appropriately recognizes the policies underlying the Bankruptcy Code and Ohio exemption law; and e) allows predictability and uniformity in application.

The Sixth Circuit has endorsed the use of the LIBT in bankruptcy cases in order to determine what property should be exempted from a debtor's bankruptcy estate. In a case involving commingled funds, the court stated that the case presented a classic textbook testament to the immuta-

ble anonymity of the erroneously styled trust funds when measured against the logic of the "lowest intermediate balance test" as discussed in Collier on Bankruptcy:

> The situation frequently occurs where trust funds have been traced into a general bank account of the debtor. The following general principles have been applied. The bankruptcy court will follow the trust fund and decree restitution where the amount of the deposit has at all times since the intermingling of funds equaled or exceeded the amount of the trust fund. But where, after the appropriation and mingling, all of the moneys are withdrawn, the equity of the cestui is lost, although moneys from other sources are subsequently deposited in the same account. In the intermediate case where the account is reduced to a smaller sum than the trust fund, the latter must be regarded as dissipated, except as to the balance, and funds subsequently added from other sources cannot be subject to the equitable claim of the cestui que trust. If new money is deposited before the balance is reduced, the reduction should be considered to be from the new money and not from the monies held in trust. This analysis may be referred to as the lowest intermediate balance test. 4 L. King *Collier on Bankruptcy,* ¶ 541.13, at 541–79541–80 (15th ed. 1988) (footnote omitted).

*First Fed. of Michigan v. Barrow,* 878 F.2d 912, 916 (6th Cir.1989). As referenced in this decision and the quote from *Collier on Bankruptcy,* the LIBT has frequently been used in courts to trace trust funds when those funds have been commingled in accounts with non-trust funds.

However, it has also been applied to trace funds under other circumstances, such as customer deposits (*In re Columbia Gas Sys., Inc.,* 997 F.2d 1039 (3rd Cir.1993)) and drug money (*United States v. Banco Cafetero Panama,* 797 F.2d 1154,1159 (2nd Cir.1986)).

Bankruptcy courts have frequently applied the LIBT. *See Official Comm. of Unsecured Creditors v. Catholic Diocese of Wilmington, Inc.,* 432 B.R. 135 (Bankr. D.Del.2010) (LIBT used to trace funds to a pooled investment account); *Carlson Orchards, Inc. v. Linsey (In re Linsey),* 296 B.R. 582 (Bankr.D.Mass.2003) (LIBT used to trace funds and impose constructive trust on property purchased by debtors using embezzled funds); and *Meoli v. Kendall Electric, Inc. (In re R.W. Leet Electric, Inc.),* 372 B.R. 846 (6th Cir. BAP 2007) (preference defendant failed to meet burden of showing that funds were held in trust in favor of the construction suppliers using the LIBT). Further, bankruptcy courts have applied the LIBT to determine the exempt amount of funds in a debtor's bank account. Thus, while in *Patterson* Judge Whipple applied the first in, first out method in a case involving the EIC and the CTC, she later applied the LIBT to trace exempt student loan proceeds in a garnished bank account. *In re Perkins,* 2011 WL 4458961 at *2, 2011 Bankr.LEXIS 3641 at *5 (Bankr.N.D.Ohio Sep. 23, 2011). Similarly, another court applied the LIBT to trace funds to a homestead exemption. *In re Lantz,* 451 B.R. 843, 848–49 (Bankr.N.D.Ill.2011).[2]

However, there are also other compelling reasons to apply the LIBT to determine the exempt funds in a commingled

**2.** This court and other bankruptcy courts have looked to the lowest postpetition balance in a debtor's bank account to determine the amount that a bank may setoff against the debtor's funds when the bank does not seek the setoff promptly upon the debtor's bankruptcy filing. *See In re Kleather,* 208 B.R. 406, 415 (Bankr.S.D.Ohio 1997); *In re Schafer,* 315 B.R. 765, 770–71 (Bankr.D.Colo. 2004); and *In re Czyzk,* 297 B.R. 406, 409–10 (Bankr.D.N.J.2003).

bank account. Significantly, employment of the LIBT upholds the policy of construing exemptions in favor of the debtor while ensuring fairness to creditors and is supported by the purpose of the Ohio exemption for EICs and CTCs and the policy behind the granting of those credits. The purpose of the EIC and CTC is to provide financial assistance to lower income individuals and families.[3] Thus, the Ohio exemption for those credits is to provide maintenance and support for the debtor taxpayer and her dependents. *See Wood,* 459 B.R. at 266. The LIBT allows the debtor to add and subtract from the exempt balance, including to use those funds for their intended exempt purposes, that is for the debtor's and the debtor's dependents' maintenance and support, without the threat of jeopardizing the loss of the exemption for the retained funds. Use of the method recognizes the fresh start policy of the Bankruptcy Code and the policy of Ohio law of liberally construing exemptions in favor of the debtor because "[t]he lowest intermediate balance test is grounded in the fiction that if a trustee makes a withdrawal from a mixed account for personal purposes, such withdrawal will be charged to the non-trust funds first, thus maintaining as much of the trust funds as possible." *Notinger v. Migliaccio (In re Financial Resources Mortg., Inc.),* 454 B.R. 6, 17–18 (Bankr.D.N.H.2011), *quoting Old Republic Nat'l Title Ins. Co. v. Tyler (In re Dameron),* 155 F.3d 718, 722 (4th Cir.1998). *See also Columbia Gas Sys.,* 997 F.2d at 1063–64 and *City of Farrell v. Sharon Steel Corp.,* 41 F.3d 92, 102 (3rd Cir.1994). As applied to exemptions, under the LIBT, withdrawals will be charged first to the non-exempt funds, thus aiding the debtor's fresh start. *See Menninger v. Schramm (In re Schramm),* 431 B.R. 397, 400 (6th Cir. BAP 2010) (noting that the principal purpose of the Bankruptcy Code is to grant a fresh start to the "honest but unfortunate debtor" and that exemptions further this purpose by "allowing a debtor to protect property which is necessary for the survival of both the debtor and the debtor's family."). However, the LIBT protects creditors by not allowing debtors to replenish spent exempt funds with non-exempt funds.[4] In this case, the balance in the Account never dropped below $6,980.00, the exempt portion of the Debtor's tax refund, and the only deposits made during the relevant time frame were themselves exempt. If the balance had dropped below $6,980, under the LIBT, the Debtor would not have been able to replenish any of the spent funds with subsequent nonexempt deposits into the Account.

Finally, employment of the LIBT for exemption tracing promotes uniformity

**3.** *See Brasher v. McGregor (In re Brasher),* 253 B.R. 484, 489 (M.D.Ala.2000), *citing Sorenson v. United States,* 475 U.S. 851, 854, 106 S.Ct. 1600, 89 L.Ed.2d 855 (1986) (referring to the EIC as "public assistance" and discussing the purpose of the EIC); *In re Koch,* 299 B.R. 523, 527–28 (Bankr.C.D.Ill.2003) (discussing the public assistance nature of the CTC).

**4.** While the Trustee's proposed pro rata method appears fair and equitable because it assumes an equal expenditure from the exempt and nonexempt funds when the debtor spends money from the commingled account, the court concludes that the LIBT is more appropriate because it gives deference to the fresh start policy of the Bankruptcy Code and policy of Ohio law of construing exemptions liberally in favor of the Debtor. If as alleged by the Trustee there is a "windfall" to the Debtor by allocating the expenditures from the commingled account to the nonexempt funds, it is a legislatively and judicially recognized windfall favoring debtors. *See In re Weick,* 2 F.2d 647, 648 (6th Cir.1924) ("[T]he courts of Ohio, for the purpose of maintaining the home and, is so far as possible, preventing pauperism and illiteracy, have uniformly given a liberal construction to all exemption statutes for the benefit of the debtor's family.").

and predictability of result. Uniformity and predictability in the application of the bankruptcy laws has been an underlying principle of bankruptcy law since the United States Constitution first authorized Congress to enact "uniform Laws on the subject of Bankruptcies." U.S. Const. art. I, § 8, cl. 4. Under the LIBT, trustees and debtors can quickly and easily determine what amount is exempt without the need for judicial intervention or extended negotiation. In this regard, the court agrees with the Trustee that employment of the FIFO (first-in-first-out), LIFO (last-in-first-out), and FILO (first-in-last-out) methods dependent upon the timing of deposits and withdrawals could result in arbitrary results because of the particular timing of the debtors' finances, including when the debtors received the exempt funds, when the debtors received other exempt and nonexempt funds, when the debtors made expenditures from the account, and when the debtors filed their bankruptcy cases. Employment of the LIBT does not involve such variables and would not encourage debtors' manipulation of the timing of bankruptcy filings and would eliminate any deemed obligation on counsel's part to time the filing in a particular manner. The LIBT can be employed by debtors and trustees in each case with predictability of result, thereby reducing unnecessary litigation and negotiation.

### C. Application of the LIBT to this Case

■ Applying the LIBT to the Debtor's case, the court finds that $7,584.30 of the funds in the Account on the petition date were exempt and $141.72 were not exempt. The balance in the Account on March 3, 2011, just prior to the Debtor's receipt of her federal tax refund, was $409.72. On March 4, 2011, the Debtor's 2010 federal income tax refund in the amount of $8,609.00 was directly deposited into the Account. The refundable portions of the EIC and CTC constituted $6,980.00 of the $8,609.00. The remainder of the tax refund ($1,629.00) represents nonexempt excess federal tax withholdings from the Debtor's wages, as well as certain nonexempt tax credits. Thus, after the tax refund deposit on March 4th, the Account consisted of $6,980.00 in exempt funds and $2,038.72 in nonexempt funds. The Debtor made four separate withdrawals totaling $1,472.00 from the account on March 4th. Under the LIBT these withdrawals are to be applied against the nonexempt funds, reducing the balance of the nonexempt funds in the account to $566.72, with the exempt portion remaining at $6,980.00. The parties agree that the three direct deposits of $23.79, $71.51, and $84.00 (totaling $179.30) made by the State of Ohio into the account for child support on March 7, 2011 were exempt pursuant to Ohio Revised Code § 2329.66(A)(11). There also is no dispute that the Debtor is entitled to a cash exemption in the amount of $425.00 pursuant to § 2329.66(A)(3). Thus, under LIBT and the facts of this case, $7,584.30 ($6,980.00 + $179.30 + $425.00) of the $7,726.02 balance in the Debtor's account on the petition date are exempt and $141.72 are not exempt.

### VII. Conclusion

For all these reasons, the Trustee's objection to the Debtor's claim of exemption is sustained in part and overruled in part in accordance with this decision. The Debtor is ordered to turn over to the Trustee the sum of $141.72. The court is concurrently entering an order on this decision.

**IT IS SO ORDERED.**